IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | |
|---|---|
| CHARLES E. ZELLERS, Sr., ) | |
|    Plaintiff, ) | Civil Action No. 7:22-cv-00479 |
| ) | |
| v. ) | |
| ) | By: Elizabeth K. Dillon |
| J.N. DILLMAN, *et al.,* ) |     United States District Judge |
|    Defendants. ) | |

**MEMORANDUM OPINION**

Plaintiff Charles E. Zellers, Sr., a Virginia inmate proceeding *pro se*, brought this action pursuant to 42 U.S.C. § 1983, alleging that the use of metal handcuffs when transporting him to an outside hospital for a sleep assessment study violated his constitutional rights. (Compl., Dkt. No. 1.) Before the court is a motion for summary judgment filed by four of the six defendants: J.N. Dillman, B. Roche, Adrian Tucker, and J.A. Woodson. (Dkt. No. 47.)[1] Defendants filed affidavits in support of their motion, including some grievance documents.[2] (Dkt. No. 48.) Zellers responded, in opposition to the motion, and attached his own declaration, declarations of some other inmates, some of his medical records, grievance records, and some photographs of his wrists and ankles. (Doc. No. 62.) For the reasons stated below, defendants' motion for summary judgment will be granted.

---

[1] The other two defendants, Paul C. Ohai and D. Johnson, filed separate motions for summary judgment. Dkt. Nos. 70, 80.)

[2] Two of the affidavits were initially filed with signatures, but the affidavits were later verified and filed. (Dkt. Nos. 58 and 59.)

I. BACKGROUND

A. Parties

Zellers is an inmate currently incarcerated within the Virginia Department of Corrections (VDOC). At all relevant times, Zellers was housed at Buckingham Correctional Center (BKCC), a VDOC facility. Woodson is the former warden of BKCC; Roche is a corrections officer at BKCC; Tucker is a regional administrator for VDOC; and Dillman is a health services administrator for VDOC. (Compl. ¶¶ 2–7.)

B. Transport for Sleep Study

On June 10, 2021, Zellers was transported from BKCC to Virginia Commonwealth University (VCU) to undergo a sleep study. Roche was one of the transport officers who took plaintiff to VCU and returned with him to BKCC. (Affidavit of B. Roche (Roche Aff.) ¶ 4, Dkt. No. 48-4.) Plaintiff alleges that defendant Johnson applied the restraints that were used during the transport—standard (small) metal mechanical handcuffs, black box, short waist chain and shackles. (Compl. ¶¶ 6; Zellers Declaration in Opposition to Defendants' Motion for Summary Judgment (Zellers Decl.) ¶ 17, Dkt. No. 62.) Roche, according to Zellers, was aware of his complaints about the metal handcuffs and shackles. (Compl.¶ 7.) Zellers claims that he sustained injuries to his wrists during transport based on the transport officers' failure to use alternative forms of restraint, such as flex cuffs or oversized handcuffs, and a long waist chainthat would not fit him so tightly. (*Id.* ¶¶ 12, 13, 17.) Zellers alleges that the failure to use different restraints injured him and violated his rights under the Eighth and Fourteenth Amendments. (*Id.* ¶¶ 17, 101–21.)

Zellers alleges that he suffers from several health conditions, including obesity and peripheral neuropathy, and the medical records support these diagnoses. (*Id.* ¶ 48; Dkt. No. 62-

1, Exs. 18, 19, 21a, 21b..)  Zellers claims that the standard metal handcuffs should not have been used because of his neuropathy issues.  (Affidavit of Adrian Tucker (Tucker Aff.) ¶ 5, Encl. B, Dkt. No. 48-3.)  Zellers states that he asked Roche and Johnson to use oversized restraints, but they refused.  (Zellers Decl. ¶¶ 18–19.)

When Johnson arrived on the day of transport, Zellers asked if him if he brought the oversized restraints, but someone nearby told Johnson that, per Dr. Ohai, Zellers did not require oversized restraints.  (*Id.* ¶ 19.)  Johnson escorted Zellers to Property, and Zellers changed his clothes and dressed in a transportation outfit.  (*Id.* ¶ 20.)  Johnson then placed the small, tight, metal mechanical handcuffs and shackles on Zellers, placed the black box over the handcuffs, and inserted the short waist chain.  (*Id.* ¶ 21.)  When Zellers arrived at the sally port, he told the sally port officer and Roche that the handcuffs, shackles, and waist chain were too tight.  (*Id.* ¶ 22.)  Zellers was told that the drive to the VCU Sleep Center was approximately one hour and thirty minutes.  (*Id.* ¶ 23.)

Upon arrival at the Sleep Center, Zellers showed Johnson and Roche his swollen and purple wrists.  (*Id.* ¶ 24.)  Zellers was unable to complete his sleep study due to the lack of a recent negative COVID-19 test.  (*Id.* ¶ 25.)  After sitting in the Sleep Center for half an hour, Zellers was escorted back to the van and then driven back to the facility.  (*Id.* ¶¶ 26–27.)  Zellers asserts that his wrists became red, purple, and swollen, and he suffered several lacerations.  (Zellers Decl. ¶ 30; Ex. 27.)  Zellers states that, upon his return to the facility, he complained about his injuries to Roche, Johnson, and the facility nurse.  (Zellers Decl. ¶¶ 28–30.)  The nurse noted his complaints and that he had red rings around his wrists.  (Dkt. No. 62-1, Ex. 27.)  No treatment was prescribed.  (*Id.*)  Photos taken five days later show minimal markings.  (*Id.*, Ex. 28.)

Zellers previously discussed his neuropathy issues with the institutional physician, defendant Dr. Ohai. (Affidavit of J.A. Woodson (Woodson Aff.) ¶ 5, Dkt. No. 48-1; Zellers Aff., Ex. 21b, Dkt. No. 62-1 at 8.) Dr. Ohai does not make the decision on how an inmate is transported, but security staff accepts input from the institutional physician about how an inmate is restrained during transport. (Woodson Aff. ¶ 6.) If the physician recommends that alternative cuffs be used during transportation based on a medical need, "security reviews the information and all safety and security concerns before approving the use of flex cuffs." (*Id.*) Dr. Ohai did not recommend that alternative cuffs be used for plaintiff's transport. (*Id.*)

Security staff consults with medical staff before approving alternative restraints because "security staff cannot be certain as to which medical conditions might require a different form of restraint." (Woodson Aff. ¶ 7.) Security staff rely on the recommendations of medical staff as to whether there is a medical need, as opposed to a personal preference, for a different type of physical restraint. (*Id.*) Because there was no medical order allowing the use of flex or oversized cuffs for Zellers, regular restraints were used during plaintiff's June 10, 2021, transport. (Roche Aff. ¶ 6.) Regular restraints are typically used in accordance with VDOC policy regarding the transportation of offenders outside of the prison. (*Id.* ¶ 8.)

**C. Grievance Background**

On November 17, 2020, Dr. Ohai, the institutional physician, noted in Zellers' medical file that "his request for 'extra-large wrist cuff use' was declined due to security reasons and this was clearly communicated to him." (Dkt. No. 1-1 at 14; Zellers Aff., Ex. 21b, Dkt. No. 62-1 at 8.) After that denial, but before the transportation run that is the subject of Zellers' complaint, Zellers submitted two informal complaints and two grievances regarding the use of regular restraints whenever he was transported away from the prison. (*See* Dkt. No. 1-1, BKCC-20-INF-

03687, BKCC-21-INF-01222, BKC-21-REG-00130; Tucker Aff. ¶¶ 5, 6, Encls. B, C, Dkt. No. 48-3.) On June 16–17, 2021, after the subject transportation run, Zellers submitted a series of ten informal complaints. (*See*, *e.g.*, Dkt. No. 1-1, BKCC-21-INF-01679, BKCC-21-INF-01699.) On June 30, 2021, after receiving responses to each of the ten informal complaints, Zellers submitted corresponding regular grievances. Each regular grievance was rejected at intake. (*See, e.g.*, Dkt. No. 1-1, BKCC-21-INF-01661.) Previously, on June 25, 2021, plaintiff had submitted another informal complaint, and then a regular grievance, which was deemed unfounded. (*Id.*, BKCC-21-REG-00190.)

On July 9, 2021, Zellers submitted an informal complaint challenging the "institutional policy" that he alleged gave the institutional physician "authority to determine what size metal handcuffs, shackles, and waist chain is used on each inmate during transportation." (Dkt. No. 1-1, BKCC-21-INF-01924.) In response, Zellers was informed that the institutional physician does not make this decision. Rather, security accepts input from the physician when determining which restraints to use.

**D. Defendants' Involvement**

Defendant Roche, as noted, accompanied Zellers on the transportation run for his sleep study.

Tucker is the regional operations officer for the central region of VDOC. (Tucker Aff. 1.) His only involvement with this litigation was a review of the Level II grievance response for BKCC-21-REG-00130, which he signed on June 7, 2021, prior to the events involved in this case. (Tucker Aff. ¶ 6.) The regional ombudsman performed the grievance investigation and prepared the written appeal response. (Tucker Aff. ¶ 8.) Tucker recalls that the grievance appeal investigation "did not discover any information tending to indicate that Zellers had a medical

need, as opposed to a personal preference, for the use of flex cuffs during transportation." (*Id.*) "Because a medical provider had reviewed the request for flex cuffs and denied that request, transportation officers were acting in accordance with VDOC policy by using regular restraints when Zellers was transported away from the facility." (*Id.*) Tucker has not handled any other grievance appeals from Zellers regarding the use of restraints. (Tucker Aff. ¶ 7.) At no time did Tucker "believe, or have any reason to believe, that using regular restraints posed an unreasonable risk of serious harm as to inmate Zellers." (Tucker Aff. ¶ 8.)

Dillman's role as the chief of health services is administrative. He is not a medical professional and does not "dispute the clinical decisions of treating physicians." (Dillman Aff. ¶¶ 4–5, Dkt. No. 48-2.) Prior to the filing of this lawsuit, Dillman was unaware of any complaints or grievances from Zellers regarding the use of metal restraints. (Dillman Aff. ¶ 6.) Dillman did sign a Level II grievance response, but this grievance related to Zellers' complaints about "receiving copies of lab results and color photographs." (Dillman Aff. ¶ 7.) Dillman does not play any role in determining what types of restraints should be used on an inmate during transportation. At no time did he believe, or have reason to believe, that "using regular restraints posed an unreasonable risk of serious harm as to inmate Zellers." (*Id.* ¶ 9.)

Woodson is the former warden of BKCC. (Woodson Aff. ¶ 1.) He recalls responding to one regular grievance (BKCC-21-REG-00130), filed before the incident giving rise to this lawsuit, regarding Zellers' complaint as to the use of regular restraints. (Woodson Aff. ¶ 5; Tucker Aff. Encl. B.) In that response, Zellers was informed that the institutional physician had not medically requested that alternative cuffs be used on Zellers when he was being transported. (Woodson Aff. ¶ 5.)

II.  ANALYSIS

A. **Summary Judgment Standard**

Federal Rule of Civil Procedure 56 provides that summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  The party seeking summary judgment bears the initial burden of showing the absence of any genuine issues of material fact.  *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986).  If the moving party meets this burden, the nonmoving party "may not rest upon the mere allegations or denials of its pleading, but must set forth specific facts showing there is a genuine issue for trial."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

In reviewing the supported underlying facts, all inferences must be viewed in the light most favorable to the party opposing the motion.  *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).  Additionally, the party opposing summary judgment "must do more than simply show that there is some metaphysical doubt as to the material facts."  *Id.* at 586.  That is, once the movant has met its burden to show absence of material fact, the party opposing summary judgment must then come forward with affidavits or other evidence demonstrating there is indeed a genuine issue for trial.  Fed. R. Civ. P. 56(c); *Celotex Corp.*, 477 U.S. at 323–25.  Although all justifiable inferences are to be drawn in favor of the non-movant, the non-moving party "cannot create a genuine issue of material fact through mere speculation of the building of one inference upon another."  *Beale v. Hardy*, 769 F.2d 213, 214 (4th Cir. 1985).

The court is charged with liberally construing complaints filed by *pro se* litigants, to allow them to fully develop potentially meritorious cases.  *See Cruz v. Beto*, 405 U.S. 319

(1972); *Haines v. Kerner*, 404 U.S. 519 (1972). At the summary judgment stage, however, the court's function is not to decide issues of fact, but to decide whether there is an issue of fact to be tried. *See Chisolm v. Moultrie*, C/A No. 4:21-03506-BHH-TER, 2023 WL 3631798, at *1 (D.S.C. May 2, 2023). A court cannot assume the existence of a genuine issue of material fact where none exists. Fed. R. Civ. P. 56(c).

**B. Eighth Amendment**[3]

The Eighth Amendment protects prisoners from "unnecessary and wanton infliction of pain." *Estelle v. Gamble*, 429 U.S. 97, 103 (1976). That protection imposes on prison officials an affirmative "obligation to take reasonable measures to guarantee the safety of . . . inmates." *Whitley*, 475 U.S. at 320. Some Eighth Amendment violations constitute "deliberate indifference," while others constitute "excessive force." *Id.*; *Thompson v. Commonwealth of Va.*, 878 F.3d 89, 97 (4th Cir. 2017).

The deliberate indifference standard generally applies to cases alleging failures to safeguard the inmate's health and safety, including failing to protect inmates from attack, maintaining inhumane conditions of confinement, or failing to render medical assistance. *See Farmer v. Brennan*, 511 U.S. 825, 833–34 (1994); *Wilson v. Seiter*, 501 U.S. 294, 303 (1991). The deliberate indifference standard is a two-pronged test: (1) the prisoner must be exposed to a "substantial risk of serious harm," and (2) the prison official must know of and disregard that substantial risk to the inmate's health or safety. *Thompson*, 878 F.3d at 97–98. In excessive force claims, on the other hand, courts must determine "whether force was applied in a good-

---

[3] Zellers references the Fourteenth Amendment, but "the Due Process Clause affords no greater protection than does the Cruel and Unusual Punishment Clause." *Whitley v. Albers*, 475 U.S. 312, 327 (1987). Allegations that prison officials have used excessive force or have been indifferent to prison conditions imposed without a legitimate penological purposes "fall squarely within the ambit of the Eighth Amendment—not the due process clause." *Prieto v. Clarke*, 780 F.3d 245, 251 (4th Cir. 2015). Therefore, Zellers cannot bring a stand-alone substantive due process claim.

faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *Hudson v. McMillian*, 503 U.S. 1, 7 (1992).  Factors to consider include (1) the need for application of force, (2) the relationship between that need and the amount of force used, (3) the threat reasonably perceived by the responsible officials, and (4) any efforts made to temper the severity of a forceful response.  *Iko v. Shreve*, 535 F.3d 225, 239 (4th Cir. 2008) (citing *Whitley*, 475 U.S. at 321).  The ultimate question is "whether the use of force could plausibly have been thought necessary, or instead evinced such wantonness with respect to the unjustified infliction of harm as is tantamount to a knowing willingness that it occur."  *Whitley*, 475 U.S. at 321.

      First, under the deliberate indifference standard, plaintiff alleges that the handcuffs were tight and uncomfortable, but he has not created an issue of fact on whether the use of regular handcuffs exposed him to a substantial risk of serious harm.  Zellers states that his wrists were injured, but he was also evaluated by a doctor prior to transport who did not think his health issues, particularly his neuropathy, warranted the use of different handcuffs.  Also, plaintiff cannot show that Roche, in transporting plaintiff in regular cuffs, deliberately disregarded a substantial risk to plaintiff's safety.  Roche was not aware of, and had no reason to be aware of, such a risk because a physician had not made a recommendation for the use of alternative restraints.

      Second, under the excessive force standard, there are no issues of fact suggesting that Roche acted maliciously and sadistically to cause harm by transporting Zellers in regular restraints.  Under the *Whitley* factors, there was a need to use force because Zellers, a prisoner, was being transported outside of a secure facility to a civilian hospital.  The amount of force used was minimal, no more than is used for any other inmate in the same situation.  Zellers does not allege that he was treated roughly while in the restraints.  Moreover, Roche did not apply any

force to Zellers, who alleges that defendant Johnson applied the restraints. (*See* Compl. ¶¶ 6–7.) To the extent that Roche can be responsible for not removing or modifying the restraints,[4] the use of handcuffs, without more, is insufficient to constitute an Eighth Amendment violation. *Price v. White*, No. 5:13-CV-P76-R, 2013 WL 4773969, at *5 (W.D. Kent. Sept. 4, 2013) ("[H]andcuffs and shackles are an ordinary part of prison life, and their use, without more, is neither cruel nor unusual."); *Teasley v. Barnette*, No. 5:05 CV 23-03-MU, 2005 WL 1806411, at *2 (W.D.N.C. July 25, 2005) ("Plaintiff's allegation that his handcuffs were too tight does not state an Eighth Amendment claim for excessive force."); *Ireland v. Solano Cnty. Sheriff*, No. 2:08-CV-2102-RCF, 2009 WL 3055217, at *1 (E.D. Cal. Sept. 16, 2009) ("The ordinary use of handcuffs and other restraints, while undoubtedly uncomfortable, is part of the 'routine discomfort that is part of the penalty that criminal offenders pay for their offenses against society.'") (quoting *Hudson*, 503 U.S. at 9). Moreover, it appears that any injuries to Zellers' wrists were *de minimis*, and there is no evidence of any nerve damage.

**C. Personal Involvement**

As for defendants Dillman, Tucker, and Woodson, none of these defendants were present during Zellers' June 10, 2021, transport, and neither were any of them responsible for or involved in the decision to use regular restraints. Under § 1983, a plaintiff must "affirmatively show[] that the official charged acted personally in the deprivation of the plaintiff's rights" to establish personal liability. *See Williamson v. Stirling*, 912 F.3d 154, 171 (4th Cir. 2018); *Wilcox v. Brown*, 877 F.3d 161, 170 (4th Cir. 2017) (noting liability will only lie in § 1983 actions where it is "affirmatively shown that the official charged acted personally in the deprivation of

---

[4] The court agrees with defendants that plaintiff's claim against Roche appears to be based on a bystander theory of liability. *See Randall v. Prince George's Cnty.*, 302 F.3d 188, 203 (4th Cir. 2002).

the plaintiffs' rights"). These defendants were involved with certain grievances filed by plaintiff, but "[o]nly persons who cause or participate in [constitutional] violations are responsible. Ruling against a prisoner on an administrative complaint does not cause or contribute to the violation." *George v. Smith*, 507 F.3d 605, 609 (7th Cir. 2007); *Hoglan v. Robinson*, No. 7:16cv00595, 2022 WL 909041, at *2 (W.D. Va. Mar. 28, 2022) ("[A] prison official's act of responding to a grievance generally does not cause or contribute to a constitutional violation.").

**D. Supervisor Liability**

Zellers also cannot succeed on any claim for supervisory liability. Supervisor liability can attach only if a supervisor "had actual or constructive knowledge" that a "subordinate was engaged in conduct that posed 'a pervasive and unreasonable risk' of constitutional injury," that the supervisor's "response to that knowledge was so inadequate as to show 'deliberate indifference to or tacit authorization of the alleged offensive practices'" and there was an "'affirmative causal link' between the supervisor's inaction and the particular constitutional injury suffered by the plaintiff." *Wilkins v. Montgomery*, 751 F.3d 214, 226 (4th Cir. 2014) (quoting *Shaw v. Stroud*, 13 F.3d 791, 799 (4th Cir. 1994)). There are no issues of fact suggesting that Dillman, Roche, Woodson, or Tucker can be liable for any potential constitutional violations as a supervisor.

III. CONCLUSION

For these reasons, defendants are entitled to summary judgment on Zellers' Eighth Amendment claim. The court will issue an appropriate order.

Entered: September 25, 2023.

/s/ Elizabeth K. Dillon
Elizabeth K. Dillon
United States District Judge