CLERK'S OFFICE U.S. DIST. COURT
AT ROANOKE, VA
FILED

March 25, 2024
LAURA A. AUSTIN, CLERK
BY: /s/T. Taylor
DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | |
|---|---|
| CHARLES E. ZELLERS, Sr.,<br>　　Plaintiff, | )<br>)<br>) Civil Action No. 7:22-cv-00479 |
| v. | )<br>)<br>) By: Elizabeth K. Dillon |
| PAUL C. OHAI, *et al.*,<br>　　Defendants. | )<br>) United States District Judge<br>) |

**MEMORANDUM OPINION**

Plaintiff Charles E. Zellers, Sr., a Virginia inmate proceeding *pro se*, brought this action pursuant to 42 U.S.C. § 1983, alleging that the use of metal handcuffs when transporting him to an outside hospital for a sleep assessment study violated his constitutional rights. (Compl., Dkt. No. 1.) Before the court are motions for summary judgment filed by the two remaining defendants in this action: Paul C. Ohai, M.D. (Dkt. No. 70) and D. Johnson (Dkt. No. 80). For the reasons that follow, these motions will be granted.

I. BACKGROUND

**A. Parties**

Zellers is an inmate currently incarcerated within the Virginia Department of Corrections (VDOC). At all relevant times, Zellers was housed at Buckingham Correctional Center (BKCC), a VDOC facility. Dr. Ohai is a medical doctor licensed in the Commonwealth of Virginia since 1994. He is board certified in family medicine. (Ex. 1, Ohai Decl. ¶ 1, Dkt. No. 71-1.) At the time of the events in question, Dr. Ohai was one of the health care providers treating patients at BKCC and had worked in that capacity since November of 2019. He has worked in the correctional setting since 1994, and currently covers Dilwyn Correctional Center. (*Id.* ¶ 2.) D. Johnson is a former corrections officer at BKCC.

In this action, Zellers also sued J.N. Dillman, B. Roche, Adrian Tucker, and J.A. Woodson. Woodson is the former warden of BKCC; Roche is a corrections officer at BKCC; Tucker is a regional administrator for VDOC; and Dillman is a health services administrator for VDOC. (Compl. ¶¶ 2–7.) The court granted summary judgment to these defendants on September 25, 2023. (*See* 9/25/23 Mem. Op., Dkt. No. 87; Dkt. No. 88.)

In his response to the pending summary judgment motions filed by Dr. Ohai and Johnson, Zellers cites and relies upon the declaration and exhibits that he filed in response to the previous summary judgment motion that was granted by the court. (*See* Dkt. Nos. 62, 62-1.) This includes his own declaration, declarations of some other inmates, some of his medical records, grievance records, and some photographs of his wrists and ankles. (*See id.*) Zellers also filed some additional exhibits in response to Dr. Ohai's motion. (Dkt. Nos. 75-1, 77-1.) Finally, Zellers notes that his complaint was verified, and should be considered as an affidavit in opposition to summary judgment. (Dkt. No. 75 at 1–2.)

**B. Transport for Sleep Study**

On June 10, 2021, Zellers was transported from BKCC to Virginia Commonwealth University (VCU) to undergo a sleep study. Roche was one of the transport officers who took plaintiff to VCU and returned with him to BKCC. (Roche Aff. ¶ 4, Dkt. No. 59.)[1] Johnson was the other transport officer. (Johnson Aff. ¶ 4, Dkt. No. 90.) Plaintiff alleges that Johnson applied the restraints that were used during the transport—standard (small) metal mechanical handcuffs, black box, short waist chain and shackles. (Compl. ¶ 6.) Zellers claims that he sustained injuries to his wrists during transport based on the transport officers' failure to use

---

[1] In support of his motion for summary judgment, Johnson relies on affidavits previously filed with the court, including affidavits provided by Roche, Woodson (Dkt. No. 58), Dillman (Dkt. No. 48-2), and Tucker (Dkt. No. 48-3, in addition to providing his own affidavit (Dkt. No. 90).

alternative forms of restraint, such as flex cuffs or oversize handcuffs that would not fit him so tightly. (*Id.* ¶¶ 13, 17.) Zellers alleges that the failure to use different restraints violated his rights under the Eighth and Fourteenth Amendments. (*Id.* ¶¶ 101–21.) Zellers' complaint also cites the Rehabilitation Act and the Americans with Disabilities Act. (*Id.* at p. 27.)

Zellers alleges that he suffers from several health conditions, including obesity and peripheral neuropathy, and the medical records support these diagnoses. (*Id.* ¶ 48.) Zellers claims that the standard metal handcuffs should not have been used due to his neuropathy issues. (Tucker Aff. ¶ 5, Encl. B.) Zellers states that he asked Roche and Johnson to use oversized restraints, but they refused. (Zellers Decl. ¶¶ 18–19.)

When Johnson arrived on the day of transport, Zellers asked if him if he brought the oversized restraints, but someone nearby told Johnson that, per Dr. Ohai, Zellers did not require oversized restraints. (*Id.* ¶ 19.) Johnson escorted Zellers to Property, and Zellers changed his clothes and dressed in a transportation outfit. (*Id.* ¶ 20.) Johnson then placed the small, tight, metal mechanical handcuffs and shackles on Zellers, placed the black box over the handcuffs, and inserted the short waist chain. (*Id.* ¶ 21.) When Zellers arrived at the sally port, he told the sally port officer and Roche that the handcuffs, shackles, and waist chain were too tight. (*Id.* ¶ 22.) Zellers was told that the drive to the VCU Sleep Center was approximately one hour and thirty minutes. (*Id.* ¶ 23.)

Upon arrival at the Sleep Center, Zellers showed Johnson and Roche his swollen and purple wrists. (*Id.* ¶ 24.) Zellers was unable to complete his sleep study due to the lack of a recent negative COVID-19 test. (*Id.* ¶ 25.) After sitting in the Sleep Center for half an hour, Zellers was escorted back to the van and then driven back to the facility. (*Id.* ¶¶ 26–27.) Zellers asserts that his wrists became red, purple, and swollen, and he suffered several lacerations. (*Id.* ¶

30; Ex. 27.) Zellers states that, upon his return to the facility, he complained about his injuries to Roche, Johnson, and the facility nurse. (*Id.* ¶¶ 28–30.) The nurse noted his complaints and that he had red rings around his wrists. (Dkt. No. 62-1, Ex. 27.) No treatment was prescribed. (*Id.*) Photos taken five days later show minimal markings. (*Id.*, Ex. 28.)

Zellers previously discussed his neuropathy issues with Dr. Ohai. (Woodson Aff. ¶ 5; Zellers Decl., Ex. 21b, Dkt. No. 62-1 at 8.) Dr. Ohai, however, does not make the decision on how an inmate is transported, but security staff accepts input from the institutional physician about how an inmate is restrained during transport. (Woodson Aff. ¶ 6.) If the physician recommends that alternative cuffs be used during transportation based on a medical need, "security reviews the information and all safety and security concerns before approving the use of flex cuffs." (*Id.*) Dr. Ohai did not recommend that alternative cuffs be used for plaintiff's transport. (*Id.*)

Security staff consults with medical staff before approving alternative restraints because "security staff cannot be certain as to which medical conditions might require a different form of restraint." (Woodson Aff. ¶ 7.) Security staff rely on the recommendations of medical staff as to whether there is a medical need, as opposed to a personal preference, for a different type of physical restraint. (*Id.*) Because there was no medical order allowing the use of flex or oversized cuffs for Zellers, regular restraints were used during plaintiff's June 10, 2021, transport. (Roche Aff. ¶ 6.) Regular restraints are typically used in accordance with VDOC policy regarding the transportation of offenders outside of the prison. (*Id.* 8.)

## C. Medical Treatment and Dr. Ohai

On March 5, 2019, Zellers was denied large wrist restraints by another physician (not Dr. Ohai). (Ohai Decl. ¶ 3.) Dr. Ohai first saw Zellers on November 17, 2020, when Zellers

4

returned to BKCC from a four-month hospitalization for COVID-19. (*Id.* ¶ 4.) Dr. Ohai's note from that visit is as follows:

> Pt. was admitted on 09/03/2020 and discharged on 11/13/2020. Essentially, Pt. had a protracted course of COVID-19 with secondary complications. He was hospitalized for rehabilitation and supportive care. His only symptom at discharge was MILD, intermittent SOB, needed only incentive spirometer (self-use) secondary to possible chronic pulmonary fibrosis and does not seem to have longstanding effects or deficits from COVID-19 infection as per Dr. K. Sharma during our transfer/medical discharge discussion on 11/12/2020.
>
> **S:** 1. Complaining of chronic SOB, wants extra pillow and continued use of incentive spirometer. 2. Wants better control of HTN; because he reports that several BP readings were high at the hospital. 3. Wants therapy options for neuropathic symptoms in the left hand, both ankles, both feet and left calf. Refused Cymbalta because "it does not work", also states Gabapentin does not work. Wants trial of Pamelor for neuropathy and addition of HCTZ to HTN regimen in addition to increase Coreg to 25 mg po bid. Notably, patient has gained over 30 lbs. while at the hospital due to "better food and exercises!" 4. *His request for "extra-large wrist cuff use" was declined due to security reasons and this was clearly communicated to him today*. 5. Had influenza vac on 10/23/2020 at the hospital. 6. Wants extra pillow to help with continued SOB until his "Full recovery." He understands that this will be ordered for a limited time. One year only.
>
> **O:** comfortable, obese, NAD ("Not in acute distress"). Ambulant without assistive device, hydration good, increased BP noted otherwise VSS. Speech was clear and coherent, breathing is not labored. HEENT and Neck; normalcephalic. PERLA EOM. Neck supple. Chest – lungs CTS (B). CV RRR – S1 S2 NL without m (m=murmur) Abd. Full soft non-traumatic. Extremities – bilateral lower leg edema +1 present or demonstrable. Neuro – moves all limbs actively. No N/V = No neuro-vascular deficits.
>
> **A/P:** 1. Obesity, HTN, GERD, status post COVID-19 syndrome with clinically mild neuropathy & SOB. Discussed medical management plans and medications changes in detail. He was agreeable with medication changes that I made today. 1. BPH. 2. Discontinue Coreg 12.5 mg and D/C Prilosec 20 mg. 3. Start Coreg 25 mg po bid x 90 days 4. Start Protonix 40 mg p.o QD x 90 days. 5. Start HcTZ 25 mg po QD x 90 days. 6. Chest x ray 2 views next

> week (baseline study). 7. Check CBC, fasting CMP, HgbA1C, TSH, CRP, fasting lipids, check urinalysis with urine culture next week, PSA test. 8. Provide #1 (single extra pillow) for head support to help with SOB x 1 year only. 9. Tylenol ES 500 mg tablets po bid prn x 30 days. 10. Return to Chronic Care Clinic as needed.

(*Id.* ¶ 5 (emphasis added).) At this visit, Dr. Ohai assessed plaintiff's neurologic status in his wrists. While Zellers complained of neuropathic symptoms in his left hand, Dr. Ohai's testing revealed that his neurovascular status was normal. (*Id.* ¶ 6.) Because there were no objective findings of neurological compromise in Zellers' wrists, Dr. Ohai declined to order larger wrist restraints. (*Id.* ¶ 7.)

Nurse Morris assessed Zellers on June 10, 2021, when he returned from sleep study trip. She observed red rings around his wrists. (Ohai Decl. ¶ 8.) Dr. Ohai saw Zellers on June 24, 2021. At that time, Zellers asked again for large wrist and ankle cuffs during transportation. Dr. Ohai did not find any bruising or scarring on Zellers' wrists or ankles. (*Id.* ¶ 9.) On July 6, 2021, Zellers saw a nurse practitioner and again asked for flex cuffs during transfer. According to her note, she advised "NO flex cuffs during transfer at this time." (*Id.* ¶ 10.) Zellers did not suffer any neurologic injury as a result of the use of wrist restraints. (*Id.* ¶ 12.)

## II. ANALYSIS

### A. Summary Judgment Standard

Federal Rule of Civil Procedure 56 provides that summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." The party seeking summary judgment bears the initial burden of showing the absence of any genuine issues of material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986). If the moving party meets this burden, the

nonmoving party "may not rest upon the mere allegations or denials of its pleading, but must set forth specific facts showing there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

In reviewing the supported underlying facts, all inferences must be viewed in the light most favorable to the party opposing the motion. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). Additionally, the party opposing summary judgment "must do more than simply show that there is some metaphysical doubt as to the material facts." *Id.* at 586. That is, once the movant has met its burden to show absence of material fact, the party opposing summary judgment must then come forward with affidavits or other evidence demonstrating there is indeed a genuine issue for trial. Fed. R. Civ. P. 56(c); *Celotex Corp.*, 477 U.S. at 323–25. Although all justifiable inferences are to be drawn in favor of the non-movant, the non-moving party "cannot create a genuine issue of material fact through mere speculation of the building of one inference upon another." *Beale v. Hardy*, 769 F.2d 213, 214 (4th Cir. 1985).

The court is charged with liberally construing complaints filed by *pro se* litigants, to allow them to fully develop potentially meritorious cases. *See Cruz v. Beto*, 405 U.S. 319 (1972); *Haines v. Kerner*, 404 U.S. 519 (1972). At the summary judgment stage, however, the court's function is not to decide issues of fact, but to decide whether there is an issue of fact to be tried. *See Chisolm v. Moultrie*, C/A No. 4:21-03506-BHH-TER, 2023 WL 3631798, at *1 (D.S.C. May 2, 2023). A court cannot assume the existence of a genuine issue of material fact where none exists. Fed. R. Civ. P. 56(c).

### B. Eighth Amendment[2]

The Eighth Amendment protects prisoners from "unnecessary and wanton infliction of pain." *Estelle v. Gamble*, 429 U.S. 97, 103 (1976). That protection imposes on prison officials an affirmative "obligation to take reasonable measures to guarantee the safety of . . . inmates." *Whitley*, 475 U.S. at 320. Some Eighth Amendment violations constitute "deliberate indifference," while others constitute "excessive force." *Id.*; *Thompson v. Commonwealth of Va.*, 878 F.3d 89, 97 (4th Cir. 2017). The deliberate indifference standard generally applies to cases alleging failures to safeguard the inmate's health and safety, including failing to protect inmates from attack, maintaining inhumane conditions of confinement, or failing to render medical assistance. *See Farmer v. Brennan*, 511 U.S. 825, 833–34 (1994); *Wilson v. Seiter*, 501 U.S. 294, 303 (1991). In excessive force claims, on the other hand, courts must determine "whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *Hudson v. McMillian*, 503 U.S. 1, 7 (1992).

### 1. Dr. Ohai

Zellers alleges that Dr. Ohai was deliberately indifferent to his serious medical need for special wrist cuffs. Deliberate indifference to a serious medical need requires proof that, objectively, the prisoner plaintiff was suffering from a serious medical need and that, subjectively, the prison staff were aware of the need for medical attention but failed to either provide it or ensure it was available. *See Farmer*, 511 U.S. at 834–37; *Heyer v. United States Bureau of Prisons*, 849 F.3d 209–10 (4th Cir. 2017). Objectively, the medical condition at issue

---

[2] Zellers references the Fourteenth Amendment, but "the Due Process Clause affords no greater protection than does the Cruel and Unusual Punishment Clause." *Whitley v. Albers*, 475 U.S. 312, 327 (1987). Allegations that prison officials have used excessive force or have been indifferent to prison conditions imposed without a legitimate penological purposes "fall squarely within the ambit of the Eighth Amendment—not the due process clause." *Prieto v. Clarke*, 780 F.3d 245, 251 (4th Cir. 2015). Therefore, Zellers cannot bring a stand-alone substantive due process claim.

must be serious. *Hudson*, 503 U.S. at 9. "A 'serious medical need' is 'one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention.'" *Heyer*, 849 F.3d at 210 (quoting *Iko v. Shreve*, 535 F.3d 225, 241 (4th Cir. 2008)).

After a serious medical need is established, a successful claim requires proof that the defendant was subjectively reckless in treating or failing to treat the serious medical condition. *See Farmer*, 511 U.S. at 842. "Actual knowledge or awareness on the part of the alleged inflicter . . . becomes essential to proof of deliberate indifference 'because prison officials who lacked knowledge of a risk cannot be said to have inflicted punishment.'" *Brice v. Va. Beach Corr. Ctr.*, 58 F.3d 101, 105 (4th Cir. 1995) (quoting *Farmer*, 511 U.S. at 844). "Deliberate indifference is a very high standard—a showing of mere negligence will not meet it." *Grayson v. Peed*, 195 F.3d 692, 695 (4th Cir. 1999). Indeed, "many acts or omissions that would constitute medical malpractice will not rise to the level of deliberate indifference." *Jackson v. Lightsey*, 775 F.3d 170, 178 (4th Cir. 2014). A mere disagreement between an inmate and a physician over the appropriate level of care does not establish an Eighth Amendment violation absent exceptional circumstances. *Scinto v. Stansberry*, 841 F.3d 219, 225 (4th Cir. 2016).

Zellers' Eighth Amendment claim against Dr. Ohai fails because Dr. Ohai examined Zellers and determined that there were no objective abnormalities suggesting that the use of larger handcuffs would be helpful or appropriate. Thus, there are no issues of fact as to whether Zellers was suffering from a serious medical condition. Moreover, on the subjective component, Dr. Ohai was not reckless in his treatment of Zellers' condition. Instead, it was his medical opinion that Zellers' condition did not warrant larger restraints and that would suffer no harm as

9

a result of the use of ordinary wrist restraints. Zellers' disagreement with Dr. Ohai's evaluation and diagnosis is insufficient to create any relevant issues of fact.

Zellers argues that the objective standard is met because he has been diagnosed with peripheral neuropathy. (Dkt. No. 75 at 2; Exs. 1–4, Dkt. No. 75-1.) Even so, Dr. Ohai documented Zellers' complaints of neuropathic symptoms in his hands, feet, and legs. He simply determined that Zellers' condition was not serious enough to warrant the use of different handcuffs. Zellers also argues that Dr. Ohai's diagnosis and recommendation were mistaken because he is now allowed to use oversized restraints at a different facility where Dr. Ohai is not involved. (Dkt. No. 75 at 11.) This does not advance or support Zellers' claim because even where "hindsight suggests" that a doctor's "treatment decisions may have been mistaken, even gravely so," disagreement "over the inmate's proper medical care . . . fall short of showing deliberate indifference." *Jackson*, 775 F.3d at 178. Finally, Zellers repeatedly argues that Dr. Ohai had a duty to keep him free from pain and suffering, yet Dr. Ohai refused to perform this duty. (Dkt. No. 75 at 6; Dkt. No. 77 at 2.) This argument does not reflect the applicable standard for an Eighth Amendment claim.

In his response to Dr. Ohai's motion for summary judgment, Zellers complains that he did not have the opportunity or the court's assistance in obtaining certain information in discovery. (Dkt. No. 75 at 2.) He notes that he would like to compel former watch commander, Lt. W. Bailey, to write an affidavit as to the injuries he witnessed and the whereabouts of four photographs taken by Bailey. The court notes that Zellers filed on the court's docket requests for production and interrogatories requesting this and other information from defendants. (Dkt. Nos. 54, 55.) Zellers, however, never filed a motion to compel defendants to produce the requested information. Moreover, it is difficult to understand how Zellers has been prejudiced in this

instance because he was already able to submit pictures of the purported injuries to his feet and hands. (Dkt. No. 62-1 at 19, 21.) Ultimately, the purported seriousness of the injuries, in hindsight, is insufficient to establish that Dr. Ohai was subjectively reckless in determining that Zellers did not require the use of oversized restraints.

Dr. Ohai is entitled to summary judgment on Zellers' Eighth Amendment claim.

### 2. Johnson

Zellers alleges that Johnson was deliberately indifferent when he, along with Roche, transported Zellers for the sleep study using regular handcuffs. First, under the deliberate indifference standard, plaintiff alleges that the handcuffs were tight and uncomfortable, but he has not created an issue of fact on whether the use of regular handcuffs exposed him to a substantial risk of serious harm. Zellers states that his wrists were injured, but he was also evaluated by Dr. Ohai prior to transport who did not think his health issues, particularly his neuropathy, warranted the use of different handcuffs. Also, plaintiff cannot show that Johnson, in transporting plaintiff in regular cuffs, deliberately disregarded a substantial risk to plaintiff's safety. Johnson was not aware of, and had no reason to be aware of, such a risk because a physician had not made a recommendation for the use of alternative restraints.

Second, under the excessive force standard, courts consider a variety of factors, including (1) the need for application of force, (2) the relationship between that need and the amount of force used, (3) the threat reasonably perceived by the responsible officials, and (4) any efforts made to temper the severity of a forceful response. *Iko*, 535 F.3d at 239 (citing *Whitley*, 475 U.S. at 321). The ultimate question is "whether the use of force could plausibly have been thought necessary, or instead evinced such wantonness with respect to the unjustified infliction of harm as is tantamount to a knowing willingness that it occur." *Whitley*, 475 U.S. at 321.

11

There are no issues of fact suggesting that Johnson acted maliciously and sadistically to cause harm by transporting Zellers in regular restraints. Under the *Whitley* factors, there was a need to use force because Zellers, a prisoner, was being transported outside of a secure facility to a civilian hospital. The amount of force used was minimal, no more than is used for any other inmate in the same situation. Zellers does not allege that he was treated roughly while in the restraints. The use of handcuffs, without more, is insufficient to constitute an Eighth Amendment violation. *Price v. White*, No. 5:13-CV-P76-R, 2013 WL 4773969, at *5 (W.D. Kent. Sept. 4, 2013) ("[H]andcuffs and shackles are an ordinary part of prison life, and their use, without more, is neither cruel nor unusual."); *Teasley v. Barnette*, No. 5:05 CV 23-03-MU, 2005 WL 1806411, at *2 (W.D.N.C. July 25, 2005) ("Plaintiff's allegation that his handcuffs were too tight does not state an Eighth Amendment claim for excessive force."); *Ireland v. Solano Cnty. Sheriff*, No. 2:08-CV-2102-RCF, 2009 WL 3055217, at *1 (E.D. Cal. Sept. 16, 2009) ("The ordinary use of handcuffs and other restraints, while undoubtedly uncomfortable, is part of the 'routine discomfort that is part of the penalty that criminal offenders pay for their offenses against society.'") (quoting *Hudson*, 503 U.S. at 9). Moreover, it appears that any injuries to Zellers' wrists were *de minimis*, and there is no evidence of any nerve damage.

Johnson is also entitled to summary judgment on Zellers' Eighth Amendment claim.

**C. ADA**

Dr. Ohai has also moved for summary judgment on a purported claim by Zellers under Title II of the Americans with Disabilities Act (ADA). The court has reviewed Zellers' verified complaint and concludes that Zellers has not stated an ADA claim. He mentions the ADA and the Rehabilitation Act in the introduction and in the relief requested section, but a request for relief is not the same as a claim that the statute was violated. Zellers also deliberately and

specifically sets forth claims for denial of due process, misuse of force, and Eighth Amendment violations, but nowhere does he claim that defendants violated the ADA. Because the court finds that Zellers did not sue defendants under the ADA, it will deny Dr. Ohai's motion to the extent he seeks judgment on an ADA claim.

### III.  CONCLUSION

For the reasons stated in the foregoing opinion, the court will enter an appropriate order granting in part and denying in part Dr. Ohai's motion for summary judgment, granting Johnson's motion for summary judgment, and dismissing this action with prejudice.

Entered: March 24, 2024.

*/s/ Elizabeth K. Dillon*
Elizabeth K. Dillon
United States District Judge